IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALONSO GAMON                                                PETITIONER
ADC # 155603A

V.                    Case No. 2:15-CV-02028-PKH-MEF

WENDY KELLY, Director,
Arkansas Department of Correction                          RESPONDENT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a

Person in State Custody (Doc. 1) filed February 11, 2015 by Petitioner, Alonso Gamon. A Response

(Doc. 8) was filed by Respondent on May 12, 2015. No Reply has been filed by Petitioner. The

matter is ready for Report and Recommendation.

### I. Background

On April 19, 2012, an Information was filed against Petitioner, Alonso Gamon ("Gamon"),

in the Circuit Court of Crawford County, Arkansas, alleging that Gamon had committed five (5)

counts of the offense of Computer Child Pornography (Ark. Code Ann. § 5-27-603(a)(1)), a Class

B Felony, in that Gamon on or about April 10, 2012  knowingly utilized a computer online service,

internet service, or local bulletin board service to seduce, solicit, lure, or entice or attempt to seduce,

solicit, lure, or entice a child or another individual believed by the person to be a child, to engage in

sexually explicit conduct. (Doc. 8-3, p. 1)

On July 31, 2013, Gamon appeared, with his retained counsel, James W. Robb, before the

Hon. Gary R. Cottrell, Circuit Judge, for a change of plea hearing. (Doc. 9-1, pp. 1-23) An

announcement was made to the Court that the State was amending the charges against Gamon to five

-1-

counts of distributing, possession, or viewing matters depicting sexually explicit conduct involving a child, in violation of Ark. Code Ann. §5-27-602, a Class C Felony. (Doc. 9-1, pp. 2-3, 7-8) A Plea Statement was presented to the Court in connection with Gamon's proposed change of plea. (Doc. 9-1, p. 10) In it, Gamon verified, among other things: notice of his trial rights; that he fully understood what he was charged with having done; that he understood the penalty the law provided; that he discussed his case fully with his attorney and he was satisfied with his services and advice; that his lawyer had explained what a plea of guilty meant, and that he fully understood what could happen to him if he entered the guilty plea; that he was entering his pleas of guilty on his own free will and accord without anyone causing him to do so on account of any promises or threats; that if he pleads guilty, he understood that his attorney and the prosecuting attorney agreed to recommend that he be sentenced to six years in the ADC on count one, and that the Court suspend imposition of sentence for an additional nine years on counts two through five; that he had talked this over with his attorney and he accepted this as a fair and reasonable arrangement on his part; and, that he knew what he was doing and was voluntarily pleading guilty. (A copy of the Plea Statement was not attached to the State's Response, but a copy was obtained from the records maintained by the Crawford County Circuit Clerk and is attached hereto.)

Upon inquiry by the Circuit Judge, Gamon stated that no person had threatened him to get him to change his plea; that he was pleading guilty freely and voluntarily; that his attorney had gone over the Plea Statement and explained it to him; that he signed the written Plea Statement; that there was a factual basis for his guilty pleas; and, that he understood that he had a right to file any objections he may have regarding his counsel within 90 days, and that after 90 days he waived that right. (Doc. 9-1, pp. 8-18) The Circuit Judge accepted Gamon's unconditional pleas of guilty, and

he followed the parties' sentencing recommendations in pronouncing sentence. (Doc. 9-1, pp. 13-17)

Pursuant to the terms of the plea agreement, Gamon was sentenced, on count one, to a term of imprisonment in the Arkansas Department of Correction for six years for the offense of distributing, possession, or viewing matters depicting sexually explicit conduct involving a child, in violation of Ark. Code Ann. §5-27-602, a Class C Felony, and imposition of sentence was suspended for nine years on counts two through five. (Doc. 9-1, pp. 16-17) The Sentencing Order was entered by the Court on August 16, 2013. (Doc. 8-3, pp. 14-20) An Amended Sentencing Order was entered by the Court five days later on August 21, 2013. (Doc. 8-3, pp. 21-26)  No direct appeal was taken by Gamon[1]. No petition for post-conviction relief under Ark. R. Crim. P. 37.1 was filed within 90 days of entry of the Amended Sentencing Order.

On May 5, 2014, Gamon filed a Petition for Writ of Error Coram Nobis in the Circuit Court of Crawford County, Arkansas. (Doc. 8-3, pp. 27-41) Gamon set forth a litany of 17 grounds which he alleged entitled him to post-conviction relief. (Doc. 8-3, pp. 31-36) In explaining his due diligence in presenting his claim, Gamon asserted that "some of the claims presented, such as errors pertaining to search warrant execution, could not have been presented at or near occurrence due to counsel's refusal to investigate and present claims," and that "numerous other claims could not be presented at or near time because they were somehow hidden and/or unknown, such as particularities missing from affidavit and/or warrant." Gamon also asserts that upon discovering facts or claims presented, that he did not delay but was hindered due to "difficulty obtaining proper information, mental health issues, and limited time and opportunity to research errors at the law library available within

---

[1] In Arkansas, a criminal defendant has no right to appeal from a guilty plea, except for an appeal from a conditional guilty plea based on the denial of a suppression motion. *See* Ark. R. App. P. - Crim. 1(a).

incarceration facilities." (Doc. 8-3, p. 38)

On May 19, 2014, the Court entered an Order reciting that Gamon voluntarily pled guilty on July 31, 2013; that a Sentencing Order was filed on August 16, 2013, and an Amended Sentencing Order was filed on August 21, 2013; and, that no other motions have been filed in the case. The Circuit Judge stated in his Order that, "[t]he relief requested is consistent with a Rule 37, which has not been filed in the above-styled matter," and the Petition for Writ of Error Coram Nobis was denied without hearing. (Doc. 8-3, p. 43) No appeal was taken from that Order.

On June 11, 2014, Gamon filed a Petition for Writ of Habeas Corpus in the Circuit Court of Crawford County, Arkansas. (Doc. 8-3, pp. 67-78) Gamon set forth the same 17 grounds for relief which he previously raised in his Petition for Writ of Error Coram Nobis, plus he added an 18th ground relating to ineffective assistance of counsel for failing to obtain evidence and expert testimony from a neuropsychologist concerning psychosexuality in connection with Gamon's alleged behavior, and he added reference to several international treaties he averred were superior to State laws and Constitutions and which he alleged were violated. (Doc. 8-3, pp. 69-75) Simultaneously, Gamon filed a Request Under the Arkansas Freedom of Information Act (Doc. 8-3, pp. 57-60), a Motion for Appointment of Counsel, a Motion for Transcript (Doc. 8-3, pp. 63-65), and a Petition for Leave to Proceed In Forma Pauperis. (Copies of the Motion for Appointment of Counsel and Petition for Leave to Proceed In Forma Pauperis were not attached to the State's Response, but copies were obtained from the records maintained by the Crawford County Circuit Clerk and are attached hereto.) On July 18, 2014, the Circuit Court entered an Order in which it considered the Petition for Leave to Proceed In Forma Pauperis, "and other matters before the Court," and the Court found that "this Court does not have jurisdiction," and it denied the Petition for Leave to Proceed

-4-

In Forma Pauperis. (Doc. 8-3, p. 79) No appeal was taken from that Order. No Order specifically denying Gamon's Petition for Writ of Habeas Corpus has ever been entered.

Gamon then filed the instant Petition under §2254 on February 11, 2015[2]. (Doc. 1) Gamon sets forth the same 18 grounds which he previously asserted in his State court Petition for Writ of Error Coram Nobis and his State court Petition for Writ of Habeas Corpus. The asserted grounds are summarized as follows: (1) the detective did not state in his affidavit previous experience with the "round-up" program, its reliability, previous case use, its functions, nor its particular use in the circumstances underlying the affidavit; (2) the affidavit contained no information supporting the affiant's investigation of the I.P. address, nor show probable cause or reasonable suspicion that any activity was going on with the I.P. address, and that there was no court order granting permission to search or investigate the I.P. address; (3) the subpoena issued that required Cox Communications to disclose customer records was done without prior notice from affiant nor prosecution, nor was delayed notification authorized; (4) the affiant did not describe in his affidavit the particularities of the persons or places to be searched and the persons or things to be seized; (5) the magistrate issued the warrant without questioning affiant about experience with the "round-up" program, its reliability, use in previous cases, and its functions; (6) the magistrate accepted affiant's affidavit without questioning the particularity of persons or places to be searched and persons or things to be seized; (7) the magistrate failed to provide or require a recording of affiant's oral testimony to accompany the affidavit; (8) the magistrate failed to make a practical, common-sense decision as to the totality

---

[2] The Petition was received by the U. S. District Court Clerk and officially filed on February 11, 2015. Gamon signed the Petition and placed it in the prison mail system on January 23, 2015. It is not legally significant in this action whether the Petition was filed on February 11, 2015, or on January 23, 2015 pursuant to the *mailbox rule*.

of the circumstances set forth in the affidavit; (9) while defects could have been cured, the magistrate failed to put the affiant under oath nor allowed him to testify or execute a supplemental affidavit under oath if affiant had good cause as to defects in the affidavit; (10) that the search warrant was issued without describing with particularity the time or the place where application for the warrant was made, and it also failed to describe with particularity the location and designation of the place(s) to be searched; (11) the detective and other officers failed to follow rules and procedure in execution of the search warrant by not knocking and announcing their presence, identity and authority prior to entering; (12) the detective violated Gamon's Miranda Rights by coercing a statement from him at the time the search warrant was being executed; (13) the officers would not allow the use of cell phones nor permit anyone to go anywhere during the execution of the search warrant, and one officer refused to let Daniel Gamon close the door to the restroom and stood watching him defecate until he finished; (14) the detective did not identify himself prior to and during arrest nor inform Gamon as to the cause of the arrest; (15) the detective failed to issue receipt and warrant copy detailing the items seized upon completion of the search; (16) the detective entered a report of the search and seizure under false pretenses; (17) prosecutorial misconduct by refusing to give notice of subpoena of records, failure to drop charges when they were found to be erroneous, failure to consider alternative methods of handling the situation other than prosecution, and failure to take Gamon's interests and rights into account; and, (18) ineffective assistance of counsel for failing to obtain evidence and expert testimony from a neuropsychologist concerning psychosexuality in connection with Gamon's alleged behavior. (Doc. 1, pp. 12-16)

Regarding the timeliness of the petition, Gamon alleges that the timeliness requirement should be considered "on hold" due to (a) "excessively pending Habeas Corpus in Circuit Court

since June, 2014, and (b) pending writ of mandamus petition in Arkansas Supreme Court, both of which were filed before the one year limitations period had expired. (Doc. 1, p. 10)

## II.  Discussion

Following a change of plea hearing on July 31, 2013, a Sentencing Order was entered by the Circuit Court of Crawford County, Arkansas on August 16, 2013. (Doc. 8-3, pp. 14-20) An Amended Sentencing Order was entered five days later on August 21, 2013. (Doc. 8-3, pp. 21-26) No direct appeal was, or could be, taken from the Amended Sentencing Order, nor was a petition for post-conviction relief under Ark. R. Crim. P. 37.1 filed within 90 days of the Amended Sentencing Order. Gamon attempted to seek post-conviction relief in State court on May 5, 2014 when he filed his Petition for Writ of Error Coram Nobis. (Doc. 8-3, pp. 27-39) That petition was denied as being an untimely Rule 37 petition. (Doc. 8-3, p. 43) Gamon then filed a Petition for Writ of Habeas Corpus in State court on June 11, 2014. (Doc. 8-3, pp. 67-78) The Circuit Court entered an Order on July 18, 2014 indicating that the Court had no jurisdiction. (Doc. 8-3, p. 79) No appeal was taken regarding the denial of his efforts to obtain post-conviction relief in State court. Gamon then waited until January 23, 2015, over four months after the one year limitations period expired, to submit the instant § 2254 Petition. For the reasons addressed below, Gamon's § 2254 Petition is time barred, his claims are procedurally defaulted, and his voluntary and intelligent guilty pleas foreclosed any constitutional claims that may have occurred prior to the guilty pleas. Gamon's § 2254 Petition should be summarily dismissed without evidentiary hearing.

### A.  Statutory Tolling Does Not Apply

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for filing federal habeas corpus petitions which runs from "the date on which

the judgment became final by the conclusion of direct review or the expiration of the time for seeking review." 28 U.S.C. § 2244(d)(1)(A). The statute of limitations is tolled, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id*. § 2244(d)(2).

In *Artuz v. Bennett*, 531 U.S. 4, 5, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), the United States Supreme Court defined a "properly filed" state post-conviction relief petition under § 2244(d)(2):

> "An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is *properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." (Citations and footnote omitted.)

After *Artuz*, the Supreme Court in *Carey v. Saffold*, 536 U.S. 214, 217, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002), defined a "pending" state post-conviction relief petition under § 2244(d)(2). The Court determined a petition is "pending" during "the time between a lower state court's decision and the filing of a notice of appeal to a higher state court." *Id*. The Court intimated that, if the state court ultimately determines the petition did not comply with the state's timeliness requirements, the petition would not have been "pending" during that period within the meaning of § 2244(d)(2)'s tolling provision. *Id*. at 226. The Court concluded once the state's highest court determines the petition is untimely, "that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether it timeliness ruling was entangled with the merits." *Id*. What the Court intimated in *Saffold*, it expressly held in *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807,

-8-

1812, 161 L.Ed.2d 669 (2005): "when a post-conviction petition is untimely under state law, 'that

is the end of the matter' for purposes of § 2244(d)(2)." (Quoting *Saffold*, 536 U.S. at 226.) *See also*

*Walker v. Norris*, 436 F.3d 1026, 1030 (8th Cir. 2006); *Nelson v. Norris*, 618 F.3d 886, 892 (8th Cir.

2010).

During Gamon's change of plea hearing, the Circuit Judge explicitly informed Gamon that

he had 90 days to seek post-conviction relief. (Doc. 9, p. 18) The following colloquy took place:

| | |
|---|---|
| THE COURT: | It's my obligation to state to you and every - - every defendant, who passes before this court and entered a plea, that you have ninety (90) days to state any objection to counsel. I can't think of what you would because your attorney has gotten this dropped down from a hundred years down to fifty - - do you understand that - - |
| MR. GAMON: | (Indicating) |
| THE COURT: | - - as far as what your liability is, as far as this matter is concerned. But, it is my job - - my duty to state to you, no matter how well your attorney has done for you, that you have ninety (90) days to state any objection to counsel. After ninety (90) days, you waive that right. Do you understand that, Alonso? |
| MR. GAMON: | Yes, Sir. (Doc. 9, p. 18) |

Gamon could not pursue a direct appeal from the Amended Sentencing Order as it was based

on his unconditional guilty pleas. Arkansas law does not permit an appeal from an unconditional

guilty plea. *See* Ark. R. Crim. P. - Crim. 1(a). Despite the Circuit Court's admonition that a petition

seeking post-conviction relief must be filed within 90 days, Gamon did not file any post-conviction

proceedings within 90 days from entry of the Amended Sentencing Order. Instead, on May 5, 2014,

nearly nine months after entry of the Amended Sentencing Order, Gamon filed a Petition for Writ

of Error Coram Nobis in the Circuit Court. (Doc. 8-3, pp. 27-41) Gamon set forth the identical 17

grounds for relief in that Petition which he now asserts in this action.

Arkansas law makes it clear that "regardless of the label" placed upon it, "a pleading is considered an application for relief under Arkansas Rule of Criminal Procedure 37.1 (2007) if the grounds asserted in it mount a collateral attack on the judgment of conviction cognizable under that rule." *See Winnett v. State*, 2015 Ark. 134, ___ S.W.3d ___ (2015), citing *Parker v. State*, 2014 Ark. 542, 453 S.W.3d 123 (2014); *Walker v. State*, 283 Ark. 339, 676 S.W.2d 460 (1984)(petitions which raise grounds for relief cognizable under Rule 37 are considered petitions to proceed under Rule 37, regardless of the label given them by the petitioner); and, *Williams v. State*, 289 Ark. 385, 711 S.W.2d 479 (1986)(trial court was authorized to treat petition for writ of error coram nobis which sought to vacate guilty pleas as petition under post-conviction rule).

No doubt cognizant of that precedent, the Circuit Court considered Gamon's Petition for Writ of Error Coram Nobis as a petition for post-conviction relief under Rule 37.1 in that it mounted a collateral attack on the judgment of conviction. Ark. R. Crim. Pro. 37.2(c)(i) provides that "[i]f a conviction was obtained on a plea of guilty, . . . a petition claiming relief under this rule must be filed in the appropriate circuit court within ninety (90) days of the date of entry of judgment." "The time limitations imposed in Rule 37.2(c) are jurisdictional in nature, and, if they are not met, the trial court lacks jurisdiction to grant post-conviction relief." *Parker v. State*, 2014 Ark. 542 at p. 3. Since Gamon's petition had not been filed within 90 days of the entry of the judgment of conviction, as is required by Ark. R. Crim. Pro. 37.2(c)(i), the Circuit Court denied it as untimely by Order entered on May 19, 2014. (Doc. 8-3, p. 43) No appeal from that Order was taken.

Gamon then filed a Petition for Writ of Habeas Corpus in the Circuit Court of Crawford County, Arkansas on June 11, 2014. (Doc. 8-3, pp. 67-78) On July 18, 2014, the Circuit Court entered an Order in which it considered Gamon's Petition for Leave to Proceed In Forma Pauperis,

-10-

"and other matters before the Court," and the Court found that "this Court does not have jurisdiction," and it denied the Petition for Leave to Proceed In Forma Pauperis. (Doc. 8-3, p. 79)

In his present § 2254 Petition, Gamon indicates that his State court Petition for Habeas Corpus is "currently pending." (Doc. 1, p. 3) It is true that the Circuit Court has never entered an Order explicitly denying Gamon's Petition for Habeas Corpus filed June 11, 2014, apparently because it believed it lacked jurisdiction to consider the petition. This was explained to Gamon in a letter from the Circuit Judge's Trial Court Assistant to Gamon dated October 9, 2014. (Doc. 8-3, p. 81) The letter recites the procedural background, i.e., that all of Gamon's earlier motions and his Petition for Writ of Error Coram Nobis were previously denied by Orders of the Court; that the Habeas Corpus Petition was submitted on June 11, 2014, along with a Petition for Leave to Proceed In Forma Pauperis; and, that "[t]he Circuit Court denied your petition to proceed in forma pauperis due to that this Court does not have jurisdiction." The letter concludes, "[a]fter reviewing the Court's case file, it appears that there is not currently any pending motions with the Crawford County Circuit Court as of date."

Gamon also alleges in his § 2254 Petition that he has a Writ of Mandamus pending before the Arkansas Supreme Court. (Doc. 1, pp. 3-4) Not so. Gamon apparently attempted to file such a Petition, but it was never accepted and filed by the Clerk of the Arkansas Supreme Court. The Court, through its Criminal Justice Coordinator, informed Gamon in a letter dated September 9, 2014 that his Petition for Writ of Mandamus and Affidavit of Indigency were received; that in the Petition he seeks to compel the Honorable Gary Cottrell, Circuit Judge, to grant his Motion for Return of Seized

-11-

Property[3], Motion for Transcript[4], and Petition for Writ of Habeas Corpus; and, that he asks the Arkansas Supreme Court to direct the Respondent to release him from custody. The letter further advises that the mandamus petition has been *tendered* to the Court, but that *it is Gamon's responsibility* to submit certified copies of the related pleadings to the Court in support of the petition. The uncertified documents that Gamon tendered with his mandamus petition were returned to Gamon, and he was encouraged to consult with an attorney if he had any questions about the legal procedure. A couple of weeks later, on September 25, 2014, the Arkansas Supreme Court's Criminal Justice Coordinator again wrote to Gamon, in response to Gamon's inquiry about the status of his tendered petition for writ of mandamus, and Gamon was advised that "certified documents have not been received," and that in order for his petition to be filed "it is your responsibility as the petitioner to submit a **certified** copy of the [documents]." (A copy of the September 25, 2014 letter was not attached to the State's Response, but a copy was obtained from the records maintained by the Crawford County Circuit Clerk and is attached hereto.) To date, Gamon has never submitted the certified copies of the necessary documents in order to have his Petition for Writ of Mandamus filed with the Arkansas Supreme Court, and there is no case pending before the Arkansas Supreme Court.

The Circuit Court denied Gamon's Petition for Writ of Error Coram Nobis as an untimely petition for post-conviction relief under Rule 37. As the Court held in *Pace*, *supra*, "when a post-conviction petition is untimely under state law, 'that is the end of the matter' for purposes of § 2244(d)(2)." Time limits, no matter their form, are "filing conditions," and because Gamon's Petition for Writ of Error Coram Nobis was denied as an untimely Rule 37 petition, it was not "properly

---

[3] Denied by Order entered May 19, 2014. (Doc. 8-3, p. 56)

[4] Denied by Order entered May 19, 2014. (Doc. 8-3, p. 42)

filed," and Gamon is not entitled to statutory tolling under § 2244(d)(2). *See Pace*, 125 S.Ct. at 1811, 1814.

Gamon's subsequent efforts to seek habeas corpus relief in the Crawford County Circuit Court likewise did not statutorily toll the one year limitation period. At the time of filing on June 11, 2014, Gamon was incarcerated at the North Central Facility at Calico Rock, Arkansas, which is located in Izard County. (Doc. 8-3, p. 77) The Arkansas habeas corpus statute requires that "[t]he writ shall be directed to the person in whose custody the prisoner is detained, and made returnable as soon as may be . . . before the circuit judges of the county in which it may be served, if either are within the county." Ark. Code Ann. § 16-112-105(b)(1) (Repl. 2006). The Arkansas Supreme Court has construed "the person in whose custody the prisoner is detained" to mean the "person . . . having physical custody of the prisoner." *Hundley v. Hobbs*, 2015 Ark. 70, at p. 3, 456 S.W.3d 755, 757 (2015), citing *State Dep't. of Pub. Welfare v. Lipe*, 257 Ark. 1015, 1017, 521 S.W.2d 526, 528 (1975). For a prisoner who is incarcerated in Arkansas, a petition for habeas corpus filed in any county where the prisoner is not incarcerated must be dismissed for lack of jurisdiction. *See Tyson v. State*, 2014 Ark. 421, at p. 2, 444 S.W.3d 361, 363 (2014). Accordingly, the Circuit Court of Crawford County lacked jurisdiction to consider Gamon's habeas corpus petition because Gamon was incarcerated in Izard County, Arkansas. Moreover, because the claims raised by Gamon in his habeas corpus petition were identical to the claims he raised in his earlier *coram nobis* petition, it was, under Arkansas law, in substance, another untimely petition for Rule 37 relief, which the Circuit Court was without jurisdiction to entertain. Just as Gamon's *coram nobis* petition was not "properly filed" to engage statutory tolling under § 2244(d), neither was Gamon's habeas corpus petition "properly filed."

-13-

As the Court commented in *Walker*, 436 F.3d at p. 1030, Gamon might have avoided this predicament by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies were exhausted. He did not.

### B.  No Basis for Equitable Tolling

The United States Supreme Court has held that 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). A petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 649 (quoting *Pace*, 544 U.S., at 418). A "garden variety claim of excusable neglect" does not warrant equitable tolling, and the circumstances of a case must be "extraordinary" before equitable tolling can be applied. *Id.* at 651-652. Because the doctrine is reserved for extraordinary circumstances, it gives the petitioner an "exceedingly narrow window of relief." *Shoemate v. Norris*, 390 F.3d 595, 597 (8th Cir. 2004)(quoting *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001)).

The Eighth Circuit has held that "pro se status, lack of legal knowledge or legal resources, confusion about or miscalculations of the limitations period, or the failure to recognize the legal ramifications of actions taken in prior post-conviction proceedings are inadequate to warrant equitable tolling." *Shoemate*, 390 F.3d at 598, citing *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001)(holding that "[e]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted"), and *Flanders v. Graves*, 299 F.3d 974, 976-977 (8th Cir. 2002)(finding that a claim of actual innocence could not justify equitable tolling).

-14-

In his *coram nobis* petition, and in an effort to fit within that "exceedingly narrow remedy," Gamon alleged that "some of the claims presented, such as errors pertaining to search warrant execution, could not have been presented at or near occurrence due to counsel's refusal to investigate and present claims." (Doc. 8-3, p. 38) Gamon does not explain why such claims could not have been presented in the Circuit Court; he was present at the time of the execution of the search warrant, and presumably he discussed with his counsel the matters raised regarding the execution of the search warrant. Gamon's Plea Statement confirms that he discussed his case fully with his attorney. Any complaints about his counsel failing to investigate or pursue claims regarding the validity and/or execution of the search warrant could have, and should have, been properly raised in a timely Rule 37 petition. Gamon further alleges that numerous other claims could not be presented at or near the time of the occurrence because they were "somehow hidden and/or unknown, such as particularities missing from affidavit and/or warrant." (Doc. 8-3, p. 38) In making such allegation, Gamon is simply tracking language from relevant *coram nobis* case law and, once again, he does not set forth facts to explain how such claims were "somehow hidden and/or unknown" nor why such claims could not have been presented in the Circuit Court. Under Arkansas law, vague and conclusory allegations that are unsupported by the facts do not provide a basis for either an evidentiary hearing or post-conviction relief. *See Hayes v. State*, 280 Ark. 509, 660 S.W.2d 648 (1983); *Greene v. State* 356 Ark. 59, 66-67, 146 S.W.3d 871, 877 (2004).

Gamon also alleged in his *coram nobis* petition that his efforts to file for post-conviction relief were hindered due to "difficulty obtaining proper information, mental health issues, and limited time and opportunity to research errors at the law library available within incarceration facilities." (Doc. 8-3, p. 38) None of these reasons demonstrate any action by the State to impede or

prevent the timely filing of State post-conviction relief proceedings; to the contrary, they all relate to Gamon's *pro se* status, his lack of legal knowledge or legal resources, his confusion about or miscalculations of the limitations period, or his failure to recognize the legal ramifications of actions taken in post-conviction proceedings, and as such they are inadequate to warrant equitable tolling in this action.

Gamon does not even make such allegations in this action, but instead, he asserts that the timeliness requirements for his instant petition should be considered "on hold" due to "excessively pending habeas corpus in Circuit Court since June, 2014," and "pending writ of mandamus petition in Arkansas Supreme Court." Gamon alleges that his State habeas corpus petition was filed before his one year limitation period to seek federal habeas relief expired, and that the delay in his mandamus case before the Arkansas Supreme Court is due to the "Circuit Court's failure to send needed certified pleadings filed in June, 2014." (Doc. 1, p. 10) There is neither a properly filed habeas corpus petition pending before the Crawford County Circuit Court nor a pending mandamus petition before the Arkansas Supreme Court. Statutory tolling of the one year limitation period does not apply, as Gamon's post-conviction relief proceedings were not "properly filed" under State law, and the equitable reasons he now gives, i.e., "complex circumstances that have rendered the process ineffective to protect rights of applicant due to pending pleadings" (Doc. 1, pp. 4, 6, 7, 8), do not rise to the level of some "extraordinary circumstance" standing in the way preventing his timely filing.

A prisoner's lack of legal knowledge or legal resources, or, as in this case, his failure to recognize the legal ramifications of focusing his efforts on untimely and unsuccessful State post-conviction relief proceedings, does not warrant equitable tolling of the limitations period. Similar to the circumstances in *Shoemate*, Gamon's failure to file his federal habeas petition within the one

year limitations period was due to his apparent misunderstanding of the proper procedures for filing a Rule 37 petition under Arkansas law, and the delay was not an extraordinary circumstance, nor was it due to any affirmative conduct on the part of the State.

Moreover, it cannot be found that Gamon acted with due diligence in pursuing his rights in this federal habeas case. Gamon pursued no appeal from the Circuit Court's May 19, 2014 Order denying his Petition for Writ of Error Coram Nobis as an untimely Rule 37 petition[5]. Instead, he filed a Petition for Writ of Habeas Corpus in the Circuit Court, raising the same 17 grounds, and the Circuit Court was again without jurisdiction to consider it. The Circuit Court's Order reflecting its lack of jurisdiction was entered on July 18, 2014. Had Gamon acted diligently, he still had time following entry of that July 18, 2014 Order to timely file a petition under § 2254. He did not.

As discussed above, the period during which Gamon was pursuing post-conviction relief in State court did not statutorily toll the limitations period because federal precedent requires a finding that such proceedings were not "properly filed" under State law so as to invoke statutory tolling under § 2244(d)(2). Thus, Gamon's conviction became final on September 20, 2013 (30 days after the entry of his Amended Sentencing Order on August 21, 2013). *See Camacho v. Hobbs*, 774 F.3d 931, 934-935 (8th Cir. 2015). The AEDPA one year limitations period within which Gamon could file a federal habeas petition then expired on September 22, 2014[6]. Gamon's federal habeas petition was not filed until over four months later on January 23, 2015. Such a delay does not support a

_____

[5] Not that it would have resulted in any relief, because when the lower court lacks jurisdiction over a matter, the appellate court also lacks jurisdiction. *Parker v. State*, 2014 Ark. 542, at p. 3.

[6] September 20, 2014 was a Saturday, so the statute of limitations ran out on the following Monday, September 22, 2014, pursuant to Fed. R. Civ. P. 6(a)(1)(C).

conclusion that Gamon diligently pursued his federal habeas rights. *See Pace*, 544 U.S. at 419 (five month delay in filing not diligent); *Earl v. Fabian*, 556 F.3d 717, 724 (8th Cir. 2009)(eight month delay in filing not diligent); and, *Nelson*, 618 F.3d at 893 (nine month delay in filing not diligent).

In sum, Gamon's efforts to seek post-conviction relief in State court were untimely, and the State court lacked jurisdiction to consider his claims. The State court post-conviction proceedings were not, therefore, "properly filed" under State law, and those proceedings did not statutorily toll the one year limitation period provided for in § 2244(d). Moreover, there is no factual basis to find that Gamon has been pursuing his federal habeas rights diligently and that some extraordinary circumstance stood in his way and prevented a timely filing of his federal habeas claims so as to invoke the doctrine of equitable tolling. Gamon's § 2254 Petition is untimely and subject to summary dismissal.

### C.  Gamon's Claims Are Procedurally Defaulted

It is well established that, under principles of comity, "a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991). Before a claim for relief can be considered in a federal habeas petition, "both the factual grounds and legal theories on which the claim is based must have been presented to the highest state court in order to preserve the claim for federal review." *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997)(citations omitted). State courts should have the opportunity to review the rulings of lower state courts and correct any federal constitutional errors. *Engle v. Isaac*, 456 U.S. 107, 128-29, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). The claims must be presented in a timely and procedurally correct manner so as to allow review on the merits, and a failure to do so results in a procedural

default. *Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992). "The failure to file a timely motion for post-conviction relief in the state court is a procedural default that will bar habeas review absent cause and prejudice." *Griffini v. Mitchell*, 31 F. 3d 690, 692 (8th Cir. 1994), citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977).

Under the preceding authority, all of Gamon's claims are procedurally defaulted. His grounds for relief are the identical grounds he first raised in his *coram nobis* petition. That petition was construed by the Circuit Court to be a collateral attack on the judgment of conviction under Rule 37, and it was denied as untimely. Gamon then re-asserted the same grounds in his State habeas corpus petition, and for the reasons discussed above, the Circuit Court was without jurisdiction to consider them. Although his claims have been previously asserted in State court, they were not presented "in a timely and procedurally correct manner" according to Arkansas law. Because of his failure to fairly present those claims, and State procedural rules which would prevent him from asserting those claims again now, they are procedurally defaulted. *See Kennedy*, 959 F.2d at 115; *see also* Ark. R. Crim P. 37.2(b) (all grounds for relief available to a petitioner under Rule 37 must be raised in his or her original petition unless that petition is denied without prejudice); and, Ark. R. Crim. P. 37.2(c)(ii) (imposing time limit for Rule 37 petitions from an unconditional guilty plea of 90 days from entry of judgment).

Because Gamon's claims are procedurally defaulted, review is barred unless he first demonstrates: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or, (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, as in actual innocence. *See Coleman*, 501 U.S. at 750. The existence of "cause" under the cause and prejudice test will "turn on whether the prisoner can show that some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). The Court in *Murray* noted that a showing that "the factual or legal basis for a claim was not reasonably available to counsel" (citation omitted), or that "some interference by officials" (citation omitted), would constitute cause under this standard. There is no such showing here.

### 1.  No Legally Sufficient Cause

Although Gamon asserted in his *coram nobis* petition that certain of his claims, including matters related to the validity and execution of the search warrant, "could not have been presented at or near occurrence due to counsel's refusal to investigate and present claims," Gamon fails to demonstrate how the factual or legal basis for such claims was not reasonably available to him in time to pursue timely post-conviction relief in State court. As discussed above, Gamon was present during the execution of the search warrant, and he affirmed in his Plea Statement that he discussed his case fully with his attorney; so, any claims concerning the validity and/or execution of the search warrant, or of ineffective assistance of counsel related thereto, should have been reasonably known to Gamon at the time. Gamon's further assertion that numerous other claims could not be timely presented because they were "somehow hidden and/or unknown" is wholly unsupported by any specific factual allegations. Nor is there any assertion by Gamon that there was some interference by officials that caused the untimely filing of his state post-conviction relief petitions.

Gamon also alleged in his *coram nobis* petition that his efforts to file for post-conviction relief were hindered due to "difficulty obtaining proper information, mental health issues, and limited time and opportunity to research errors at the law library available within incarceration facilities." (Doc. 8-3, p. 38) These reasons all relate to Gamon's *pro se* status, his lack of legal

knowledge or legal resources, his confusion about or miscalculations of the limitations period, or his failure to recognize the legal ramifications of actions taken in post-conviction proceedings.

Gamon's averment in his § 2254 Petition that "complex circumstances" have rendered the state law process ineffective to protect his rights (Doc. 1, pp. 4, 6, 7, 8) is another clear reference to his *pro se* status. The Eighth Circuit has held, however, that a *pro se* petitioner's lack of education or legal training, illiteracy, and *pro se* status are not external causes sufficient to excuse a procedural default. *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992). Therefore, there exists no legally sufficient cause for Gamon's procedural default.

Concerning Gamon's one ineffective assistance of counsel claim, "cause" may also be established if: (1) the claim of "ineffective assistance of counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceedings; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013), citing *Martinez v. Ryan*, 132 S.Ct. 1309, 1318-21 (2012); *see also Sasser v. Hobbs*, 735 F.3d 833, 851-53 (8th Cir. 2013) (*Martinez* applies to Arkansas convictions). A claim is "insubstantial" if it "does not have any merit or . . . is wholly without factual support" in the state court record. *Martinez*, 132 S.Ct. at 1319. As discussed in the following section, Gamon's ineffective assistance of counsel claim has no merit because his guilty pleas were voluntary and intelligent, thus Gamon cannot satisfy "cause" under *Martinez*.

### 2.  No Fundamental Miscarriage Of Justice

Gamon plead guilty to the offenses of conviction. When a guilty plea is entered, the focus

of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of

the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), *citing Tollett v. Henderson*,

411 U.S. 258, 266 (1973). As the Court in *Tollett* eloquently observed:

> "... a guilty plea represents a break in the chain of events which has
> preceded it in the criminal process. When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the offense
> with which he is charged, he may not thereafter raise independent
> claims relating to the deprivation of constitutional rights that occurred
> prior to the entry of the guilty plea. *He may only attack the voluntary
> and intelligent character of the guilty plea* by showing that the advise
> he received from counsel was not within the standards set forth in
> *McMann*[7].
>
> A guilty plea, voluntarily and intelligently entered, may not be
> vacated because the defendant was not advised of every conceivable
> constitutional plea in abatement he might have to the charge . . . And
> just as it is not sufficient for the criminal defendant seeking to set
> aside such a plea to show that his counsel in retrospect may not have
> correctly appraised the constitutional significance of certain historical
> facts, (internal citation omitted) it is likewise not sufficient that he
> show that if counsel had pursued a certain factual inquiry such a
> pursuit would have uncovered a possible constitutional infirmity in
> the proceedings." *Id*. at 267. (Emphasis added.)

The standard for determining the validity of a guilty plea remains whether it "represents a

voluntary and intelligent choice among the alternative courses of action open to the defendant."

*North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), citing *Boykin*

*v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), *Machibroda v. United*

*States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), and *Kercheval v. United States*,

274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). "While a guilty plea taken in open court

---

[7] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

In the present case, Gamon was represented by experienced retained counsel, James W. Robb, throughout the criminal proceedings leading to and including the change of plea hearing. Prior to the change of plea hearing, Mr. Robb had appeared with Gamon at the arraignment (Doc. 8-2, p. 6); he had prepared and filed discovery motions (Doc. 8-2, p. 7); he had prepared and filed a motion for a mental examination (Doc. 8-2, p. 9); and, he had prepared and filed a motion to suppress evidence (Doc. 8-2, p. 11). Mr. Robb had negotiated a plea agreement with the Prosecuting Attorney, and he carefully reviewed the related Plea Statement and Conditions of Suspension or Probation with Gamon before obtaining Gamon's signature on them. In the written Plea Statement, Gamon was advised of his Constitutional trial rights, and he acknowledged that: he fully understood what he was charged with having done; he understood the penalty the law provides; he had discussed his case fully with his counsel and was satisfied with his services and advice; his counsel explained what a plea of guilty means and what can happen if he entered a guilty plea; that he was entering his pleas of guilty on his own free will and accord without anyone causing him to do so on account of any promises or threats; he understood the disposition that his counsel and the prosecuting attorney agreed to recommend to the Court; and, that he had talked all of this over with his counsel and accepted it as a fair and reasonable arrangement on his part. By signing the Plea Statement, Gamon

admitted that he understood what was being told to him, what his rights were, and that he knew what he was doing and was voluntarily pleading guilty.

During the change of plea hearing on July 31, 2013, Gamon was examined about the offenses and his intent to change his pleas. The Circuit Court informed Gamon of the amended charges and the possible penalties. (Doc. 9, pp. 2-3) The Circuit Court told Gamon that he was not under any obligation to enter a plea, and that he had an absolute right to a jury trial. Gamon's trial rights were explained in detail, and he was informed that if he entered a guilty plea he would be giving up his trial rights. (Doc. 9, pp. 3-6) The Circuit Court made inquiry as to: whether anyone had made any promises to Gamon; whether Gamon was under the influence of alcohol or drugs; whether he understood he would lose certain civil rights as a result of the felony conviction; whether there was anything about his educational background or any physical or mental impairments that would prevent him from understanding the proceedings; whether anyone was forcing him to do this against his will; and, whether he was entering his pleas on a free and voluntary basis. (Doc. 9, pp. 8-10) Inquiry was also made as to a factual basis for the pleas, and Gamon admitted that there was a factual basis for his guilty plea to each charge. (Doc. 9, pp. 11-13) Upon such inquiry in open court, the Circuit Court accepted Gamon's guilty pleas to the five amended charges of distributing, possession, or viewing matters depicting sexually explicit conduct involving a child. (Doc. 9, pp. 13-14)

Gamon does not specifically allege in his § 2254 Petition that his claim of ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent, and invalid; but, rather, he vaguely claims that he was prejudiced when his counsel failed and refused to obtain evidence and expert testimony from Dr. Sarah Ullman, a neuropsychologist with over 20 years of worldwide experience, who "specializes in the areas of abuse, trauma, with and in connection to

-24-

psychosexuality, which was entirely relevant to any then-current and past behavior resulting from any mental or emotional difficulties." (Doc. 1, p. 17) Gamon does not aver that Dr. Ullman would have been available to consult on his case, what Dr. Ullman's testimony might have been, nor how its absence prejudiced him. Gamon's counsel did file a motion for a mental examination (Doc. 8-2, p. 9), and Paul L. Deyoub, Ph.D. conducted a mental examination of Gamon on January 30, 2013. (Doc. 8-3, p. 4) Dr. Deyoub reported the following diagnoses: Sexual Abuse of a Child, Victim; Adjustment Disorder with Depressed Mood; and, Pedophilia. (Doc. 8-3, p. 4) Dr. Deyoub further opined that at the time of the alleged conduct, Gamon did not have a mental disease or mental defect; he had the capacity for the culpable mental state that is an element of the charged offense; he had the capacity to appreciate the criminality of his conduct; and, he had the capacity to conform his conduct to the requirements of the law. (Doc. 8-3, p. 4) The undersigned agrees with the State that it is not self-evident that introducing such diagnoses and findings to a jury would have been mitigating, and that quite plausibly a jury might have found such circumstances to be aggravating.

In the context of "cause and prejudice" to overcome Gamon's procedural default, and to the extent that Gamon's § 2254 Petition does not challenge the voluntary and intelligent character of his guilty pleas, Gamon's claim of ineffective assistance of counsel is plainly deficient. Counsel did obtain a mental evaluation of Gamon, and Gamon's nebulous and conclusory allegations regarding Dr. Ullman are insufficient to support vacating guilty pleas voluntarily and intelligently entered. *Tollett*, 411 U.S. at 267. Accordingly, Gamon's claim of ineffective assistance of counsel has no merit, is without factual support, and does not constitute a "substantial" claim for the purpose of establishing "cause" under *Martinez*.

Because Gamon's pleas were freely, voluntarily and intelligently made, his other grounds

for post-conviction relief, e.g., objections to the validity and execution of the search warrant, his *Miranda* claim, and prosecutorial misconduct, are barred. "A defendant's knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *See United States v. Vaughan*, 13 F.3d 1186, 1187 (8th Cir. 1994), quoting *Tollett v. Henderson*, 411 U.S. at 267.

Finally, Gamon's reliance on the international treaties he cites is misplaced as those treaties do not provide a basis for habeas corpus relief under 28 U.S.C. § 2254. *See, e.g., U.S. ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1063 (8th Cir. 2002) ("[T]he ICCPR does not bind federal courts because the treaty is not self-executing and Congress has yet to enact implementing legislation"); *Dickens v. Lewis*, 750 F.2d 1251, 1254 (5th Cir. 1984) (explaining that "individual plaintiffs do not have standing to raise any claims under the United Nations Charter and the other international obligations"), citing *Diggs v. Richardson*, 555 F.2d 848 (D.C. Cir. 1976).

### III.  Conclusion

For the reasons and upon the authorities discussed above, Gamon's § 2254 Petition is time barred and subject to summary dismissal. Neither statutory nor equitable tolling of the one year limitations period provided for in 28 U.S.C. § 2244(d)(1)(A) is applicable in this case, and the Court need not reach and address the merits of Gamon's untimely claims. Further, Gamon's claims are all procedurally defaulted, and the default is not excused under either prong of *Coleman*. Based upon the forgoing, I recommend that Gamon's Petition, filed under 28 U.S.C. § 2254, be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely**

written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 8th day of June, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE